ANTHONY VAN BERGEN, and Others, Respondents, *v.* LUDWIG
LEHMAIER, and Others, Appellants.

*General assignment — presumption of good faith — materiality of findings of fact —
constructive guilty knowledge by one partner — facts calling for the reversal of
a judgment setting aside an assignment.*

The making of a general assignment for the benefit of creditors, in the manner
authorized by statute, does not raise a presumption that the object in view is to
prevent a distribution of the property assigned, and to coerce a settlement
with creditors.

It must be assumed that findings of fact, which a trial court deemed of sufficient
materiality to make, were considered by it in reaching its conclusions of law.

A member of a firm will not be deemed to have a constructively guilty knowl-
edge of a business transaction wholly outside of the firm business, because his
partner and a clerk participated in it.

Where the amount of a preference is for a much smaller proportion of the cash
value of the assets than is authorized by statute, it is not a subject of legal
criticism.

What evidence is insufficient to support a finding that the assignment was not
intended by the assignors to distribute the assigned property among their
creditors, but to coerce a settlement.

There is nothing unreasonable or improper in the suggestion of compromise
first coming from the assignors.

APPEAL by the defendants, Ludwig Lehmaier, Sigmund Herzog
and Nathaniel Myers, from a judgment of the Supreme Court in
favor of the plaintiffs, rendered at the New York Special Term
and entered in the office of the clerk of the city and county of New
York on the 7th day of June, 1892, adjudging that the assignment
made by the defendants Lehmaier and Herzog to the defendant
Myers on the 17th day of March, 1891, for the benefit of creditors,
was fraudulent and void as against the plaintiffs, and appointing a
receiver of the assigned property.

*Nathaniel Myers,* for the appellants.

*John J. Adams,* for the respondents.

PARKER, J.:

The firm of Lehmaier & Co., composed of Ludwig Lehmaier and
Sigmund Herzog, on the 17th day of March, 1891, made a general
assignment for the benefit of their creditors.

As composed at the time of the assignment, the firm had been in existence since January 1, 1890. For two years prior to that time, Adolph Hochstadter had been the junior member of the firm, but was succeeded by Herzog at the date mentioned. Lehmaier & Co. were wholesale dealers and importers of silks and dress goods in the city of New York, doing an annual business of $1,000,000 and upwards.

The assigned estate, after deducting over $300,000 of assets pledged as security against loans made on the strength of the pledges, had a cash value of over $170,000. The net cost value of the assets, after deducting unpaid duties, and the amount of debts contracted on the pledges of assets, was merchandise, $227,400.05; other assets, $98,137.53; total, $325.537.58.

The unsecured liabilities amounted to $375,000, including, however, $24,111.34 of contingent liability. So that, taking the assets at their cost price, there was a disparity between assets and liabilities of about $25,000.

But one creditor was preferred in the assignment. He was a brother of the senior member of the firm, and the amount of his preference was about $20,000. He had been for a number of years the commissionaire in Leipsig, of the firm, purchasing merchandise in his own name from parties in Germany, paying for it himself, shipping it in his own name to the firm, and receiving from the latter the cost price of the goods, plus his disbursements, and a commission of three per centum upon his outlays for his services.

It was for moneys thus expended, and for the commissions, by which his services were compensated, and not otherwise, that he was preferred. The amount of the preferences being for a much smaller proportion of the cash value of the assets than authorized by statute, it is not a subject of legal criticism.

The rest of the partnership assets were unreservedly devoted by the assignment to the benefit of all the creditors of the firm. Not content with receiving a ratable proportion of the assets, after payment to the preferred creditor, the plaintiffs obtained judgment, and thereafter instituted this suit to set aside the assignment, resulting in a judgment in their favor.

The trial court found as a fact that the assignment was made

"with the intent to hinder, delay and defraud their creditors, including plaintiffs."

As evidentiary facts it was found in substance :

(1) That in November, 1887, Lehmaier executed a deed, which, in form, conveyed to a third party property then valued at a few thousand dollars, situated in the town of Yonkers, who, on the same day, "went through the form of executing a deed of the said real estate" to Lehmaier's wife, but that the deeds were not recorded until the day preceding the making of the assignment.

That the title did not pass until the deed was recorded, and it was then passed for the purpose of defrauding the creditors of Lehmaier and of the firm.

(2) That on the 10th day of March, 1891, Lehmaier conveyed through a third person to his wife a lot adjoining the premises described in the deed of November, 1887, for which he paid $1,085 ; that such conveyance was wholly without consideration, and in fraud of the rights of his creditors.

(3) That such conveyance was made with the assent and connivance of the defendant assignor Sigmund Herzog, in furtherance of the said scheme to defraud the creditors of the defendant assignors, including the plaintiffs.

(4) That the said assignment was made by the defendant assignors with the intent to coerce their creditors into a settlement, and the schedules were made up and filed by them in pursuance of such scheme.

(5) That the said assignment was not intended by the defendant assignors to distribute among their creditors the assigned property, but was solely made, and intended by them, to transfer their property with intent to hinder, delay and defraud creditors, and to coerce them into a settlement.

No other finding of fact touching the alleged misconduct of the assignors, or either of them, was made, and it must be assumed on this review that findings which the trial court deemed of sufficient materiality to make were considered by him in reaching the conclusion that the facts supported a general finding that the assignment was made with intent to defraud the firm's creditors.

Now, there was evidence tending to show a consideration for the conveyance of March 10, 1891.

The contention of the Lehmaiers, husband and wife, being that subsequent to the deeds of 1887 a loan was obtained on the property therein described of $4,000, a portion of which was used to pay for the indebtedness incurred in the purchase of the lot last conveyed to her, which had no special value, except as connected with the property described in the deeds of 1887.

But, assuming that the finding is supported by the weight of evidence, the finding immediately following, which is necessarily connected with and dependent upon it, is wholly without evidence to support it.

It is that such conveyance was made with the assent and connivance of the junior member of the firm, and in furtherance of the scheme to defraud their creditors. There is no evidence that Herzog participated in, assented to, or even knew of the conveyance at the time it was made.

It is true that the conveyance was made through a clerk of the firm as the conduit.

There is no evidence that the clerk had any knowledge or suspicion that a fraud was contemplated, if one was, or that he communicated to anyone what had taken place. Certainly it cannot be said that a member of a firm will be deemed to have constructively guilty knowledge of a business transaction wholly outside of the firm business, because his partner and a clerk participated in it.

The error in the finding was probably brought about because of the fact that Herzog was the third party through whom the conveyance was attempted to be made in 1887, but he was not then a member of the firm, nor did he become such until more than two years afterwards.

That the finding thus erroneously made (doubtless because it was mistakenly supposed that Herzog was a party to the last instead of the first conveyance) had weight with the court in making the decision, seems highly probable, not only because the finding was deemed of sufficient materiality and relevancy to justify the court in making it, but also for the reason that in that way only could the assignee and Herzog be affected by the individual act of Lehmaier touching individual property — property wholly unconnected with the partnership and unaffected directly by the firm assignment.

Another finding which must be deemed to have had weight with

the court in making the general finding that the assignment was made with intent to hinder, delay and defraud the creditors of the firm, was, in substance, that the assignment was not intended by the assignors to distribute among their creditors the property assigned by it, but to coerce a settlement.

It is difficult to find support for that finding in the record.

Clearly the making of a general assignment, in the manner authorized by statute, does not raise a presumption that the object in view is to prevent a distribution of the property assigned, and to coerce a settlement with creditors.

When that act has been fully performed, and the defendants have parted with dominion over the assigned estate, the creditors are in a position to enforce, through the courts, a due administration thereof. The assignors did not attempt to retain control over the property assigned, and clearly they were powerless, in the absence of wrongdoing on the part of the assignee, to disturb the assurances which the law gives to creditors, that the assets will be properly marshalled, honestly husbanded, and ratably distributed among those entitled thereto.

The evidence contains no suggestion of unfaithfulness to his trust on the part of the assignee, no hint of an effort on his part to induce a settlement, which should secure to the creditors less than their due proportion of the estate. On the contrary, it was found as a fact "that the execution of the said general assignment to said defendant Nathaniel Myers was accompanied by an immediate, and was followed by an actual and continued change of possession of the property assigned thereby, and that said assignee proceeded to administer upon the property thus assigned to him, and did administer according to law."

If, as the finding declares, the assignee took possession of the property, and proceeded to and did administer the estate assigned according to law, how can it be possible to find that the assignors intended that something else should be done, in the absence of evidence suggesting that they had reason to expect that the assignee would act otherwise than he has?

But for the subsequent effort to bring about a composition with creditors, it would not have been suggested even that the purpose of the assignment was to coerce a settlement with the creditors.

Lehmaier says that the idea of a compromise did not originate with him, but with certain large creditors after this suit was begun, April twenty-fifth. And it appears that all of the creditors save three, preferred such a disposition of the matter, and agreed upon a basis, which, for aught that the record discloses, might have consumed all the assets of the estate.

But if the fact was that the suggestion first came from Lehmaier, instead of his falling in with the wishes of creditors, as he contends, there would be nothing wrongful in it, so long as it was a mere proposal, to be accepted or rejected, as the judgment of the creditors should dictate.

His control over the property was gone. It was being administered lawfully, and, in the absence of collusion with the assignee, of which there is no hint, the assignors were powerless to affect the rights or remedies of the creditors.

In such a situation there was no legal impropriety in advising or requesting a compromise. That fact, standing alone, would not support the conclusion that an assignment was made to coerce a settlement with creditors. A proposition of that kind, made under the circumstances described, contains no element whatever of coercion. No word or deed has been proven against the assignor or assignee, subsequent to the assignment, which could have had for its purpose the compelling of any creditor to surrender any of his rights, lest by refusing he should be a greater loser.

On the other hand, there is evidence that some of the larger creditors, provoked by the refusal of these plaintiffs, and two other creditors to join in the composition, and thus permit an immediate and ratable payment, proposed that judgments be confessed in their favor, to the end that they might first institute suits attacking the assignment, and thus plaintiff and the two other creditors would be assured that if the assignment should be set aside they would not receive anything because the judgments first obtained would be large enough to absorb the assets. With such a prospect confronting them, it was urged they would be likely to change their position, and consent to share with the other creditors. This was regarded by the assignors and the assignee as well as coercion, and for that reason they refused to lend their aid to the project. The finding next preceding the one we have been considering asserts that the

schedules were made up in pursuance of the scheme to coerce the creditors into a settlement.

There were two omissions from the schedules. The first a piece of real estate in Florida, owned by Lehmaier individually, for which he paid about $100. He testified that he had not paid any taxes on it since his purchase, and had forgotten that he owned it. The firm had no interest in it, and it had no proper place in the firm's schedule.

The second item was a claim against the United States government for $9,000, the value of which was dependent on litigation then pending between the government and certain importers. Had it been inserted, it would necessarily have been appraised at a merely nominal value. The claim was not assigned or transferred to anyone, and necessarily passed to the assignee by the assignment, but respondents' contention is, that it was omitted from the schedules in order to persuade creditors that the estate was of less than its real value.

The explanation offered by the assignors is, that the schedules were not prepared by them personally, but by a Mr. Annabel, who was employed by the assignee, and assisted by the clerks of the late firm, and that they did not examine the schedules item by item, but assumed that the work done had been correctly performed.

This explanation seems to have support in other facts. The account was not regarded as of any substantial value. It appeared on the books of the firm, then being examined by plaintiffs' experts, who at times had them in their possession, so that the assignors knew that the experts not only had the opportunity to find out, but it was their business to discover and report any omissions from the schedules.

When the attention of the assignee was called to the omission, he at once caused an amended schedule to be filed, in which was set forth the facts in regard to the claim. The amended schedule is, in respect to this claim, not open to criticism. It recites all the facts connected with it, and asserts that while the claim had little if any value when the assignment was made, it is now probably worth fifty cents on the dollar, by reason of a favorable decision involving the main point. There is nothing in the evidence to be pitted against the testimony of the witnesses, that the claim was mistakenly and

not intentionally omitted from the schedules, and the corroboration of other facts and circumstances, except the naked fact that the claim does not appear upon the original schedules. We think it ought not to be held, upon such a state of facts, that the schedules were falsely made with the view of coercing the creditors.

As we have reached the conclusion that the findings contain error which call for a reversal of the judgment, we shall refrain from discussing other questions which the record presents, for it may well be that on a new trial the evidence will be so far changed as to render such a discussion fruitless.

The judgment should be reversed, with costs to the appellant to abide the event.

Van Brunt, P. J., and Follett, J., concurred.

Judgment reversed and new trial ordered, with costs to appellants to abide event.